USCA1 Opinion

 

 July 8, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-1326 ANTHONY PISA Plaintiff, Appellant, v. UNDERWRITER AT LLOYDS, LONDON Defendant, Appellee. __________________________ ERRATA SHEET Please make the following corrections on opinion issued July 2, 1992: Cover sheet: delete the number 1 from bottom front page. On page 3, Line 13 add "d" to "produce"; On Page 3, Line 21 "was" instead of "were; On page 5, Line 20 "was" instead of "were; On page 5, Line 22 strike "ing" on "identifying." July 2, 1992 [NOT FOR PUBLICATION] ___________________ No. 92-1326 ANTHONY PISA, Plaintiff, Appellant, v. UNDERWRITERS AT LLOYDS, LONDON, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ___________________ Before Selya, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ___________________ Anthony Pisa on brief for appellant. ____________ Lawrence A. Dugan, and Morrison, Mahoney & Miller on Motion __________________ __________________________ to Dismiss or in the Alternative for Summary Affirmance and Memorandum in Support for appellee. __________________ __________________ Per Curiam. Plaintiff sought recovery under a __________ fire insurance policy. The district court granted summary judgment for defendant insurer on the ground that plaintiff had failed to comply with the policy's statutory cooperation clause1. Plaintiff has several arguments which we address in turn. First, plaintiff claims that the district court improperly resolved factual issues by concluding that plaintiff's inability to remember financial details when deposed by the insurer was evasive conduct violative of the policy's cooperation clause. Plaintiff argues that he answered to the best of his ability and that it is a jury question whether his answers were evasive, on the one hand, ____________________ 1. By statute, the policy required in material part as follows: The insured, as often as may be reasonably required, shall . . . submit to examinations under oath . . . and subscribe the same; and, as often as may be reasonably required, shall . . . produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by [the insurer]. No suit or action on this policy for the recovery on any claim shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with. R.I. Gen. L. 27-5-3. -2- or a sincere inability to remember past matter, on the other. The court did not resolve disputed factual issues. To be sure, the court did state that at the deposition plaintiff had "managed to avoid giving [the insurer] any information that could help them understand [plaintiff's] finances at the time of the fire." But, the court subsequently specifically noted that it could not resolve credibility matters and pointed out that plaintiff had not produced any requested document or authorization to obtain records. Viewed in context, the court's reference to plaintiff's deposition testimony was not a credibility determination that plaintiff had not testified truthfully, but rather background underscoring the insurer's need for the checkbook and authorizations given that plaintiff's testimony had produce little or no information concerning his or the restaurant's finances. Second, plaintiff contends that plaintiff's failure to produce the checkbook and authorization for release of tax information and financial records was not wilful noncooperation but rather the product of misunderstanding. He claims he never refused to produce either. Rather, he maintains that neither was clearly requested. Moreover, he asserts, without any record support, that he did eventually produce the checkbook. As for a release for financial -3- records or tax returns, plaintiff contends that he was willing to cooperate, but, being pro se, did not know how to draft an authorization or go about getting bank records, felt any expense in document gathering should be borne by the insurer, and was waiting for the insurer to forward an authorization for plaintiff to sign. At the very least, plaintiff argues, a jury should be permitted to determine whether plaintiff willfully refused to cooperate or rather stood ready to cooperate and to sign any authorization the insurer might prepare, but failed to meet the insurer's expectation through misunderstanding and inadvertence. We conclude both that the record belies plaintiff's present assertions of no clear demand and misunderstanding and that plaintiff failed timely to raise these claims in opposition to defendant's motion for summary judgment. Plaintiff was directed to bring to his December 6, 1990 deposition his and his business's tax returns as well as enumerated business records. He did not do so, explaining that all but the checkbook had been destroyed by fire. The December 6, 1990 deposition (at which plaintiff was represented by an attorney) concluded with the insurer's lawyer stating his understanding that plaintiff would look for the checkbook, give it to his lawyer, and discuss with his lawyer whether to provide an authorization to obtain tax returns. Plaintiff did not controvert that understanding at -4- that time. The insurer clearly stated his position at the deposition that the policy required plaintiff to provide an authorization for release of tax returns. The insurer reiterated this position in a letter several weeks later to plaintiff's attorney and once again demanded the checkbook as well as an "authorization to obtain copies of all financial records which [plaintiff] alleges are not presently within his possession as well as Federal and State Income Tax returns . . . [for] 1986, 1987, 1988, 1989." Ten months later (October 8, 1991), the insurer's lawyer stated by affidavit that plaintiff had not produced the checkbook and had not provided any authorization for defendant to obtain financial records or tax returns. So far as the record reveals, plaintiff made no timely cooperative response. He did not controvert the insurer's affidavit that the checkbook had not been turned over, he did not offer to produce anything, and he did not claim financial inability or confusion due to his pro se status. On December 12, 1991, a hearing on the motions for summary judgment was scheduled for January 16, 1992. Still, plaintiff made no overture toward cooperation. Plaintiff's present claim of confusion comes too late. Plaintiff was clearly on notice that he was required to produce relevant records. The insurer's demand for the checkbook and authorizations was reasonable under the circumstances as a matter of law. Plaintiff's failure either -5- to comply or to identify his reservations violated the cooperation clause. Third, plaintiff argues he should have been given a further chance to cooperate. An hour after the summary judgment hearing concluded, plaintiff filed a handwritten paper authorizing defendant "to retrieve any financial document or any other pertinent information" and requesting defendant to send any authorization to plaintiff's home for plaintiff to sign. The district court ruled that plaintiff's offer came too late. Plaintiff relies on New York cases, particularly Pogo Holding Corp. v. New York Property Ins. Underwriting __________________ _____________________________________ Assoc., 73 A.D.2d 605, 422 N.Y.S.2d 123 (1979), for his claim _____ that he should be given another chance. There, after the insured's treasurer had been examined under oath, the insurer requested the insured's president similarly to submit to examination and to produce certain documents. When the president refused, the insurer sought summary judgment. Even though plaintiff did not satisfactorily explain its failure of cooperation, the court, "reluctant to exact the extreme penalty of dismissal," gave plaintiff one last chance to comply. Plaintiff argues the district court should have done the same here particularly as, plaintiff claims, defendant has not been prejudiced by the delay. -6- It is true that under Rhode Island law "an insurance company must show that it has been prejudiced before an insured's failure to comply with the procedural requirement in a policy will bar recovery." Pickwick Park, ______________ Ltd. v. Terra Nova Ins. Co., 602 A.2d 515, 518 (R.I 1992); ___ ___________________ Corrente v. Fitchburg Mut. Fire Ins. Co., 557 A.2d 859, 863 ________ ____________________________ (R.I. 1989). In the present case, however, prejudice was manifest as a matter of law on the record as it existed up to the time of the hearing on the motion for summary judgment. Defendant insurer had received no documents concerning __ plaintiff's or the restaurant's financial condition and very little oral information concerning finances given plaintiff's purported memory lapse. Plaintiff's position now, however, is that in view of his post-hearing offer of cooperation, the insurer will be able to obtain tax returns and financial documents and hence will not ultimately be prejudiced. We agree with the district court's response to plaintiff's late offer: A Rule 56 motion puts an end to pre-trial maneuvering and compels the litigants to show the court what they can prove at trial. The rule gives the plaintiff a deadline to come forth with his case, and it provides the strict penalty of dismissal for those who cannot prove a case. Delaying the performance of his contractual obligations in the apparent hope that he would not have to disclose damaging information, [plaintiff] has missed his chance. -7- Pogo Holding has not been invariably followed by ____________ New York courts. When an insured's lack of cooperation is egregious, unconditional summary judgment has been granted for the insurer. See, e.g., Evans v. International Ins. Co., ___ ____ _____ _____________________ 168 A.D.2d 374, 562 N.Y.S.2d 692 (1990); Pizzirusso v. __________ Allstate Ins. Co, 143 A.D.2d 340, 532 N.Y.S.2d 309 (1988); ________________ Rosenthal v. Prudential Property & Casualty Co, 928 F.2d 493, _________ _________________________________ 495 (2d Cir. 1991) (noting that New York courts have retreated from affording an insured a last chance when the insured's failure to cooperate is wilful). In any event, regardless whether a New York court would afford a further chance to plaintiff, who filed no timely satisfactory reply, ______ offer to cooperate, or excuse for non compliance in response to defendant's affidavits and motion for summary judgment, it is Rhode Island law which controls this case. Plaintiff has pointed to no Rhode Island case law which would tolerate plaintiff's foot dragging. In these circumstances, we summarily affirm the judgment below.2 First Circuit Rule 27.1. Affirmed. ________ ____________________ 2. As we summarily affirm the judgment on the merits, we do not pass on defendant's claim that the appeal should be dismissed because plaintiff's brief and appendix do not comply with rules of appellate procedure. Defendant's request for costs and attorney's fees pursuant to Fed. R. App. P. 38 is denied. -8-